**Mrs. Rosa STEWART et al.,**
**Plaintiffs,**

v.

**United States of America,**
**Plaintiff-Intervenor,**

v.

**William L. WALLER, as Governor of the**
**State of Mississippi, et al.,**
**Defendants.**

**Civ. A. No. EC 73–42–S.**

United States District Court,
N. D. Mississippi.

July 14, 1975.

As Amended Oct. 21, 1975.

Herman Wilson, Jackson, Miss., Homer E. Moyer, Jr., Charles A. Miller, Washington, D. C., for plaintiffs.

Sidney Bixler, Dept. of Justice, Washington, D. C., H. M. Ray, U. S. Atty., Oxford, Miss., for plaintiff-intervenor.

William Allain, Asst. Atty. Gen., Heber Ladner, Jr., Jackson, Miss., Edward F. McDowell, Starkville, Miss., Robert T. Mills, Moss Point, Miss., Charles G. Perkins, Macon, Miss., Thomas J. Tubb, West Point, Miss., for defendants.

Before CLARK, Circuit Judge, and KEADY and SMITH, District Judges.

PER CURIAM:

This action is brought by eight black citizens and registered voters residing in four Mississippi municipalities on behalf of themselves and all black citizens and black municipal registered voters similarly situated to declare unconstitutional and enjoin the enforcement of Miss.Code Ann. § 21-3-7 (1972), a statute which plaintiffs assert requires at-large election of aldermen, councilmen or selectmen in all Mississippi municipalities operating under a form of city government other than the commission form.[1] Plaintiffs also seek to enjoin the practice or system of at-large election of aldermen, aside from the mandate of § 21-3-7. Federal jurisdiction is invoked under 28 U.S.C. § 1343 on claims asserted under 42 U.S.C. §§ 1981 and 1983 and the Fourteenth and Fifteenth Amendments. The named defendants are the Governor, Secretary of State, and State Attorney General, as well as the mayors, aldermen or councilmen and municipal election commissioners of the Cities of Macon, Moss Point, Starkville and West Point who are also sued as representatives of a defendant class of municipal officials of Mississippi cities having an aldermanic form of government.

Since the original complaint sought to restrain enforcement of a statute of apparent statewide application, a three-judge court, at plaintiffs' request, was convened pursuant to 28 U.S.C. § 2281. Subsequently, the United States was permitted to intervene on plaintiffs' behalf under the provisions of 42 U.S.C. § 2000h-2.[2] During the progress of the case the parties submitted several factual stipulations, affidavits, and other materials which obviated the need for an evidentiary hearing. The court makes the following determination on the merits, incorporating herein findings of fact and conclusions of law as required by Rule 52, F.R.Civ.P.

I.

THE NATURE OF THE CONTROVERSY

Prior to 1962, aldermanic elections were conducted pursuant to a state statute, applicable to code charter municipalities only, which required cities having a population of over 10,000 to elect six aldermen by wards and one from the municipality at large. Under the same statute, municipalities having less than 10,000 residents could, in the discretion of the municipal authorities, choose to elect all five of their aldermen by at-large balloting or four by wards and one from the municipality at large.[3]

---

1. The Mississippi municipalities subject to this suit are, by Miss.Code Ann. § 21-1-9 (1972), designated as follows: First, "code charter" municipalities, which exist by virtue of, and operate according to the general statutory laws of the State as prescribed in Title 21, Chapter 3 of the Code. Two alternate forms of government may be availed of by a code charter municipality, i. e., the "Council Form of Government" pursuant to Title 21, Chapter 7 of the Code or the "Council-Manager Form of Government" pursuant to Title 21, Chapter 9. Second, "private charter" municipalities, which operate under forms of government as provided by special acts of the legislature. For convenience the forms of government of all such designated municipalities shall be collectively referred to throughout this opinion as the aldermanic system or form of government. Of course, municipalities operating under the "Commission Form of Gov-

ernment" as prescribed by Title 21, Chapter 5 of the Code are expressly excluded from this litigation.

Moreover, under Code § 21-1-1, municipalities are divided into three classes according to size of population: cities, towns and villages. While these are legally distinct entities, they will be herein referred to interchangeably as municipalities, cities or towns.

2. The United States, as plaintiff-intervenor, will be included herein in the general designation of plaintiffs, unless the context requires otherwise.

3. "In all municipalities operating under a code charter and having a population of less than ten thousand, according to the latest available federal census, there shall be five aldermen, which aldermen may be elected from the municipality at large, or in the discretion of the municipal authorities, the municipality may be divided into four wards,

At the 1962 legislative session, however, the aldermanic election law was substantially altered. In place of the former statute there was substituted the present statute, § 21–3–7,[4] which mandates at-large aldermanic elections for all posts in all municipalities, irrespective of population.[5] The 1962 Act had immediate impact on twenty-six code charter municipalities which previously elected aldermen by wards, and not at-large.[6]

Plaintiffs contend that § 21–3–7 was conceived and adopted by the legislature as a purposeful device to invidiously discriminate against black voters in municipal elections by diluting black voting strength. Plaintiffs further maintain that regardless of legislative purpose, the system of at-large elections for all aldermanic posts mandated by § 21–3–7 operates unconstitutionally to dilute black voting strength by significantly reducing the possibility of black candi-

> with one alderman to be elected from each ward and one from the municipality at large. In all such municipalities having a population of ten thousand, or more, according to the latest available federal census, there shall be seven aldermen, and the municipality shall be divided into six wards with one alderman to be elected from each ward and one from the municipality at large. The municipal authorities may establish as many voting precincts in each ward as may be necessary and desirable. The mayor of the municipality shall be elected from the municipality at large." Gen.Laws of Miss., ch. 491, § 36 (1950). Miss.Code Ann. § 3374–36 (1942).

4. "In all municipalities having a population of less than ten thousand according to the latest available federal census, there shall be five aldermen, which aldermen may be elected from the municipality at large, or, in the discretion of the municipal authority, the municipality may be divided into four wards, with one alderman to be selected from each ward and one from the municipality at large. On a petition of twenty per cent of the qualified electors of any such municipality, the provisions of this section as to whether or not the aldermen shall be elected from wards or from the municipality at large shall be determined by the vote of the majority of such qualified electors of such municipality voting in a special election called for that purpose. *All aldermen shall be selected by vote of the entire electorate of the municipality. Those municipalities which determine to select one alderman from each of the four wards shall select one from the candidates for alderman from each particular ward who shall be a resident of said ward by majority vote of the entire electorate of the municipality.*

> "In all municipalities having a population of ten thousand or more, according to the latest available federal census, there shall be seven aldermen, which aldermen may be elected from the municipality at large, or, in the discretion of the municipal authority, the municipality may be divided into six wards,

> with one alderman to be selected from each ward and one from the municipality at large. On a petition of twenty per cent of the qualified electors of any such municipality, the provisions of this section as to whether or not the aldermen shall be elected from wards or from the municipality at large shall be determined by the vote of the majority of such qualified electors of such municipality voting in a special election called for that purpose. This section in no way affects the number of aldermen, councilmen, or commissioners of any city operating under a special charter. *All aldermen shall be selected by vote of the entire electorate of the municipality. Those municipalities which determine to select one alderman from each of the six wards shall select one of the candidates for alderman from each particular ward by majority vote of the entire electorate of the municipality.*" Miss.Code Ann. § 21–3–7 (1972). (Emphasis added).

5. It is true that both those municipalities with less than 10,000 in population and those with 10,000 or more are possessed, after the 1962 amendment, with an alternative election process which is a hybrid at-large system wherein aldermanic candidates for certain positions must reside within the wards which they seek to represent but are selected by citywide vote. In the interest of simplicity, the court will lump this hybrid system together with the "pure" at-large system, including both under the denomination "at-large system".

6. The code charter municipalities which had previously elected aldermen by wards but were directed by the 1962 law to elect on an at-large basis were Kosciusko, Cleveland, Wesson, Pass Christian, Lexington, Moss Point, Ocean Springs, Ellisville, Oxford, Tupelo, Brookhaven, Canton, Ridgeland, Columbia, Holly Springs, Philadelphia, Macon, Starkville, Sardis, McComb, Magnolia, Pontotoc, Forest, Magee, New Albany and Tylertown. The record does not disclose which private charter cities changed their election procedures in reliance upon the statute.

dates winning election to such offices from predominantly black wards. Since black voting power in the predominantly black wards of any city was submerged into the overall voting population of the municipality by the 1962[*] statute, support for black candidates or candidates appealing to black voters was, plaintiffs argue, thereby reduced to the extent that the municipality contained a lesser percentage of black voters than did the predominantly black wards under the previously existing ward system. Plaintiffs also claim that the additional expense of mounting citywide campaigns was intended by the legislature as a further barrier to full participation of blacks in the aldermanic election process. Finally, plaintiffs assert that, quite apart from § 21–3–7, the practice of at-large elections as a method of electing aldermen is unconstitutional per se since the system inherently dilutes black voting power. Defendants stoutly contest the validity of each contention advanced by plaintiffs.

## II.

## CLASS ACTION ISSUES

Before addressing the merits of the controversy, the court must first determine, in conformity with Rule 23, F.R. Civ.P., whether the suit may properly proceed as a class action, and, if so, establish the members of the affected classes. As previously noted, the named private plaintiffs seek to maintain the action not only on behalf of a plaintiff class of municipal residents, but also against a defendant class of municipal officers.

The named plaintiffs[7] are black citizens who are registered voters and reside in election wards having a majority of black voters in four municipalities that operate with an aldermanic form of

government. They seek to represent a plaintiff class composed of all black citizens, including all present and potentially eligible voters and all present and potential black candidates for the office of alderman, residing in the State's 265 municipalities having an aldermanic form of government.

Suits to vindicate voting rights of black citizens charging racial discrimination under the Constitution and federal statutes have frequently been allowed as class actions. Particularly where the alleged discriminatory practices have statewide application, plaintiffs in such actions have been granted Rule 23 class status. See, e. g., *Hamer v. Campbell*, 358 F.2d 215, 221 (5 Cir. 1966); *Smith v. Paris*, 257 F.Supp. 901 (M.D.Ala. 1966); *Hadnott v. Amos*, 295 F.Supp. 1003 (M.D.Ala.1968), rev'd on other grounds, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1968). The instant case presents no exception, for blacks comprise 37.2% of the State's population of 2,216,912 according to the 1970 official census. Indeed, defendants do not seriously challenge the appropriateness of the suit as a class action but only the definition to be accorded both the plaintiff and defendant classes.

First, with respect to the proposed plaintiff class, the named plaintiffs purport to represent a class of black citizens composed of residents in all of the State's municipalities having an aldermanic form of government (other than the commission form), who are registered voters or potentially eligible voters in such cities, including all present and potential black candidates for the office of alderman. It should be reiterated that plaintiffs assert that § 21–3–7 is unconstitutional, both facially and as applied, and cannot be relied upon by any municipality; moreover, plaintiffs con-

---

7. Garfield Triplett and Robert Williams, qualified voters of the City of Macon and residents of Ward 2; David Biggs and Willie M. Williams, qualified voters of the City of Moss Point and residents of Wards 2 and 3; Rosa Stewart and Harold Williams, qual-

ified voters of the City of Starkville and resident voters of Ward 6; and Albert Price and John W. Jackson, Sr., qualified voters of the City of West Point and residents of Ward 1.

tend that, apart from § 21–3–7 and any reliance thereon, the system of at-large elections in all of the State's cities having an aldermanic form of government is, per se, constitutionally invalid. Private plaintiffs seek also to define the defendant class as the mayors, aldermen and election commissioners of all municipalities, whether of code charter or private charter origin, which have aldermanic form of government. Defendants, resisting certification of such broad classes, argue instead that the plaintiff class be limited to black voters and black candidates of those municipalities having at least one ward with a majority of black voters, and which cities were expressly subject to § 21–3–7 and which after the passage of that Act in 1962 changed their method of choosing aldermen by electing all at large. Defendants urge that the defendant class should be accordingly defined as the municipal officers of all code charter municipalities having at least one ward of predominantly black voters, and which after the passage of § 21–3–7 adopted the procedure of electing all aldermen by at-large balloting. The defendants thus contend that there should be excluded from the class not only those code charter municipalities which did not change their method of electing aldermen upon the passage of § 21–3–7 but also all private charter municipalities since they assertedly are not within the purview of § 21–3–7.

Defendants' argument regarding the scope of plaintiff and defendant classes misses the mark. A delimitation of the

magnitude suggested by defendants would ignore the second contention attacking the concept of at-large elections as racially discriminatory per se and instead treat the case as solely a challenge to § 21–3–7 on the assumption that it may pertain only to certain code charter municipalities. The broader classes proposed by plaintiffs frame this action in its proper dimensions and, if Rule 23 prerequisites are met, will be adopted by this court.

As the proposed plaintiff class is framed by the private plaintiffs, Rule 23 standards are clearly met. The requisite numerosity, typicality and commonality are clearly present and, indisputably, the representative private plaintiffs, as well as the United States, plaintiff-intervenor, will adequately represent the interests of members of the class. Further, as an action founded on allegations of racial discrimination, the case for the plaintiff class falls squarely within Rule 23(b)(2).[8]

With respect to the proposed defendant class, the record shows that of a total of approximately 280 Mississippi municipalities, 265 operate with an aldermanic form of government.[9] Although the number of affected municipal officials in each city may vary, the total number of municipal officials is well over 1000, or so numerous as to make their joinder impracticable. The at-large election system and the effect of § 21–3–7 surely raise questions of law and fact common to the defendant class; the defenses of the representative defendants are typical of the class as a

8. Rule 23(b)(2):

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

9. Approximately 250 municipalities operate with code charters. Private charter munici-

palities number 24: Aberdeen, Ackerman, Carthage, Columbus, Corinth, Greenville, Grenada, Indianola, Meridian, Natchez, New Houlka, Okolona, Oxford, Plantersville, Port Gibson, Rosedale, Shannon, Summit, Utica, Vicksburg, Water Valley, Waveland, Woodville, and Yazoo City. There are 11 municipalities, not included in the present action, which have the commission form of government: Amory, Bay St. Louis, Biloxi, Charleston, Clarksdale, Greenwood, Gulfport, Hattiesburg, Jackson, Laurel, and Pascagoula. See Mississippi Official and Statistical Register, 1972–1976, at 235–53.

whole; and the named defendant municipal officials, which have sought counsel and have received legal assistance from the State's Attorney General, fairly and adequately protect the interests of the defendant class. As to the defendant class, the elements of Rule 23(b)(1)(B) [10] are here present since invalidation of the system of at-large municipal elections would, as a practical matter, be dispositive of the claims of all defendant class members.

We, therefore, certify this case as properly maintainable as a Rule 23(b)(2) class action with respect to the plaintiff class consisting of all black citizens and residents who are presently registered voters or potentially eligible voters, and all present and potential candidates of the office of aldermen, in all Mississippi municipalities which presently utilize an aldermanic form of city government. Furthermore, we allow the case to proceed under Rule 23(b)(1)(B) with respect to the defendant class composed of the mayors, aldermen and election commissioners of all Mississippi municipalities presently operating with an aldermanic form of government, excluding, of course, cities having a commission form of government.

### III.

### THE UNCONSTITUTIONALITY OF THE 1962 STATUTE

"It is axiomatic that at-large and multi-member districting schemes are not per se unconstitutional." *Zimmer v. McKeithen*, 485 F.2d 1297 (5 Cir. 1972) (en banc). However, an at-large election system may be susceptible to constitutional challenge whenever such scheme "designedly or otherwise . . .

under the circumstances of a particular case, would operate to minimize or cancel out the voting strength of racial or political elements of the voting population." *Fortson v. Dorsey*, 379 U. S. 433, 439, 85 S.Ct. 498, 501, 13 L.Ed.2d 401, 405 (1965); *Burns v. Richardson*, 384 U.S. 73, 88, 16 L.Ed.2d 376, 388, 86 S.Ct. 1286 (1966). Where at-large voting. schemes are shown to have been "conceived or operated as purposeful devices to further racial discrimination," *Whitcomb v. Chavis*, 403 U.S. 124, 149, 91 S.Ct. 1858, 1872, 29 L.Ed.2d 363, 379 (1971), or where the state policy behind multimember districting is "rooted in racial discrimination", *Taylor v. McKeithen*, 407 U.S. 191, 194, 92 S.Ct. 1980, 32 L.Ed.2d 648, 650 (1972), n. 3, *Bradas v. Rapides Parish Police Jury*, 508 F.2d 1109 (5 Cir. 1975), they cannot stand. A statute controlling any portion of the elective process which is passed for the purpose of discriminating against Negroes on account of their race has no legitimacy at all under our Constitution. *City of Richmond, Virginia v. U. S.*, 422 U.S. 358, 95 S.Ct. 2296, 45 L.Ed.2d 245 (1975). Thus in appraising the constitutionality of § 21–3–7 this court will look to both the purpose and the effect of this enactment.

Under the municipal election laws extant in 1962 which provided a ward system for almost all aldermanic elections, it was a foreseeable certainty that in many wards in many municipalities the electorate would contain a majority of black citizens. Thus aldermen elected from these wards would be the choice of that black majority. The author of § 21–3–7 is said to have urged its enactment by asserting that "this is needed to maintain our southern way of life." [11] The

---

10. (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of

the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

11. Jackson Daily News, February 23, 1962, p. 1; Jackson Daily News, March 1, 1962, p. 1, col. 4; Delta Democrat-Times, March 1, 1962, p. 1, cols. 3–4; Jackson Clarion Ledger, March 2, 1962, p. 1, cols. 1–3; Washington Post, April 11, 1962.

racial political realities of that life included the fact that only 5.66% of Mississippi's black voting age population was registered to vote in 1962 as compared with a white registration ten times greater.[11A]

When we look to the record in the case at bar we see that the effect of § 21–3–7 is entirely consistent with the racially discriminatory motive attributed to its sponsor. Considering the paucity of registered black voters in Mississippi in 1962, a requirement for at-large elections for all municipal posts would certainly tend to forestall the possibility that black aldermen might in some instances win election. Moreover, the Act's requirement that a successful candidate would have to receive a majority of the votes cast, and not a plurality, as was the case prior to the 1962 Act, is indicative of an intent to thwart the election of minority candidates to the office of alderman. Finally, the expenses and other burdens attendant upon mounting a city-wide campaign for office are calculated to deter blacks from seeking aldermanic posts against white contenders. Despite these conspicuously race-suppressing features of the 1962 Act, defendants have offered no alternative nonracial explanation of legislative intent in effecting this law change, nor do they suggest any nondiscriminatory goal for improving municipal government which might be realized by the abolition of ward elections in all municipalities.

■ Another highly pertinent factor is the long history of statutory racial segregation and discrimination in Mississippi, with consequent token participation by blacks in the political processes of the state. This aspect of the State's history has been judicially noticed by federal courts at all levels, and need not be further elaborated here. See, e.g., *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 197, 90 S.Ct. 1598, 26 L.Ed.

2d 142, 176 (1970); *U. S. v. City of Jackson, Miss.,* 318 F.2d 1, 5 (5 Cir. 1963); *Meredith v. Fair,* 298 F.2d 696 (5 Cir. 1962); *Moore v. LeFlore County Bd. of Election Comm'rs,* 361 F.Supp. 603, 605 (N.D.Miss.1972). In view of that circumstance and with an awareness of the history of race relations in Mississippi, this court, in determining the purpose for which § 21–3–7 was enacted, is not free to overlook the context giving rise to its enactment. *Smith v. Paris,* 257 F.Supp. 901 (M.D.Ala. 1966), aff'd 386 F.2d 979 (5 Cir. 1967); *Gomillion v. Lightfoot,* 364 U.S. 339, 5 L.Ed.2d 110, 81 S.Ct. 125 (1960).

Given the realities of Mississippi political life in 1962, it would be naive to believe that the naturally foreseeable consequences of a statute commanding at-large elections for all aldermanic offices, and then only by a majority vote, would be anything other than to make more difficult the election of blacks to those offices. The legislative history, the inevitable and foreseeable effect of the statute's provisions, and the historical context in which the Act was passed permit no other conclusion.

Moreover, there is abundant evidence that § 21–3–7 has achieved the intended discriminatory purpose. The agreed record discloses that the fate of black candidates in aldermanic elections under § 21–3–7 has almost universally been defeat. For example, 22 blacks have, since 1969, run in aldermanic elections in the Cities of Macon, Moss Point, Starkville, Tupelo, and West Point. All were defeated, notwithstanding the fact that these cities have black populations of 46.5%, 43.4%, 24.4%, 17.6%, and 43.-5% respectively. Each of these cities has at least one ward in which blacks constitute a majority, either of the ward's population or of its registered voters. In the more recent 1973 regular municipal elections, in eight cities with

---

[11A]. In 1960, 63.9% of the white voting age population was registered to vote. By 1965, the figure had risen to 69.9%. See U. S. Dept. of Commerce, Statistical Abstract of the United States, at 436 (95th ed. 1974); U. S. Commission on Civil Rights, The Voting Rights Act: Ten Years After, at 43 (1975).

city-wide white voting majorities black aldermanic candidates carried one or more majority black wards but lost to their white opponents in the at-large balloting.[12]

Most cogently, in municipalities in which blacks do not have at least a 2–1 population majority, the number of black aldermen elected since 1962 has never exceeded 1% of the total number of aldermen elected in those municipalities.[13] This distinctive and consistent failure of blacks to win aldermanic posts throughout the State, in municipalities of varying population size and racial and political composition, when coupled with the design and purpose of its enactment, demonstrate that black voting strength has been effectively diluted by the 1962 law change. Indeed, the proof suggests that the 1962 Act makes election of black aldermen a virtual impossibility in cities in which blacks do not constitute a clear majority of the qualified electorate.

We hold that the 1962 Act which now appears as Miss.Code § 21–3–7 (1972) is violative of the Fourteenth and Fifteenth Amendments to the Constitution of the United States as a purposeful device conceived and operated to further racial discrimination in the voting process.

Since the 1962 statute reflects a comprehensive, interrelated scheme for aldermanic elections, our holding of unconstitutionality must necessarily extend to § 21–3–7 in its entirety. Total abrogation of the statute, and not the more limited excision of only those sentences specifically mandating at-large elections for all aldermen (see note 4, supra) is the proper course since less extensive invalidation would yield an incomplete and unworkable statute. We are satisfied that the Mississippi Legislature, if presented with the court's holding of unconstitutionality, would not intend otherwise, particularly in the absence of a severability clause in the 1962 Act. See Chapter 537, Mississippi Laws of 1962.

Further, it is clear that total invalidation of § 21–3–7 does not leave a void in the state's municipal election laws. Because unconstitutional, the void 1962 statute cannot have repealed or amended a valid prior enactment, and the pre-1962 statutory law governing aldermanic elections remains in effect as if § 21–3–7 had never been enacted. *Frost v. Corporation Comm'n of Oklahoma,* 278 U.S. 515, 526–27, 49 S.Ct. 235, 73 L.Ed. 483 (1929); *Conlon v. Adamski,* 77 F.2d 397, 399 (D.C.Cir. 1935); *Ross v. Goshi,* 351 F.Supp. 949, 954 (D.Hawaii 1972); *Weissinger v. Boswell,* 330 F.Supp. 615, 625 (N.D.Ohio 1971). The court's action today thus has the effect of reinstating every law of the State of Mississippi governing the election of municipal officials which was repealed by § 21–3–7.

Our ruling is concerned with the diluting effect of the use, pursuant to the 1962 enactment of § 21–3–7, of a city-wide (at-large) procedure rather than a ward or district election for municipal officials. The applicability of the court's order is therefore not to be considered restricted by the date or type of charter involved.[14] The key is the

---

12. These cities were Moss Point, Starkville, Tupelo, West Point, Canton, Columbus, Greenville, and Vicksburg. Two other cities in which this phenomenon occurred, Greenwood and Charleston, are not included in our tabulation since they operate with a commission form of government.

13. Expressed as a percentage of the total number of aldermen, the number of elected black aldermen in such municipalities is as follows:

1965 0%   1969 0.230%   1973 0.6667%

Since adoption of the 1962 Act, only three

regular aldermanic elections have been conducted.

14. In addition to the 26 code charter municipalities immediately affected by the 1962 Act (Fn. 6), 18 code charter municipalities incorporated since 1962 were subject to the invalid statute and are bound by today's decision. These are Stonewall, Horn Lake, McLain, Pearl, Mantachie, Soso, Morgan City, Schlater, Thaxton, Polkville, Sylvarena, Falkner, Golden, Petal, Hatley, Marietta, Slate Springs and Woodland. The court further takes judicial notice that the popula-

conduct of city officials in holding aldermanic elections under the unconstitutional act.[15] Private charter municipalities (see note 9, *supra*) and those with council-manager types of governments could also be affected. We pretermit as unnecessary any ruling as to whether these other classes were legally bound to use § 21–3–7. We hold only that if they did apply it, they can do so no longer.

By way of elaboration, the court perceives that impermissible reliance by private character municipalities on the provisions of the 1962 Act could occur in either of two basic ways. In the first, municipal authorities may have concluded that the Act was binding upon them and proceeded to conduct future aldermanic elections under an at-large system in accordance with its provisions, but without seeking conforming amendment to the municipal charter. In these municipalities, in which the sole legal authority for at-large elections is § 21–3–7 of the Mississippi Code, an at-large system for aldermanic elections is constitutionally indefensible as a matter of law. Such municipalities, having unquestionably acted in reliance on the 1962 statute, are enjoined from further constitutional transgressions. In other private charter municipalities now conducting at-large elections, the matter may be less clear. Officials in some private character municipalities, believing their cities were included within the 1962 enactment, may have amended their city charters expressly to conform to the at-large aldermanic election procedure. *See* Miss. Code Ann. § 21–17–9, –11 (1972).

Where it is apparent from the municipal records that amendatory actions were made in reliance upon § 21–3–7, they are constitutionally infirm. However, where the record is silent, such amendatory action would presently be indistinguishable from similar amendments which may have taken place in private charter municipalities which acted *not* in reliance upon the 1962 statute, but for other reasons. Because of the limited nature of our present record, we pretermit any ruling on the validity of post-1962 amendments of all private charter municipalities providing for at-large elections of aldermen which do not expressly refer to their action as based on § 21–3–7.

## IV.

### VALIDITY OF THE AT–LARGE ALDERMANIC ELECTION SYSTEM APART FROM THE 1962 ACT

Plaintiffs also urge that on the basis of two recent Fifth Circuit decisions, *Zimmer v. McKeithen,* 485 F.2d 1297 (1973) (en banc), and *Turner v. McKeithen,* 490 F.2d 191 (1973), the court should extend its ruling to hold that, irrespective of the 1962 Act, at-large aldermanic elections in all the state's municipalities inherently dilute minority voting strength and are, therefore, unconstitutional per se.

Plaintiffs read *Zimmer* and *Turner* as mandating not only invalidation of the 1962 Act, but also eradication of the practice or system of at-large aldermanic elections in all Mississippi municipalities.[16] In support of their demand

---

tion of Picayune exceeded 10,000 in the 1970 census; therefore, Picayune may no longer opt for at-large aldermanic elections under the statute as it existed prior to 1962, but must conduct elections by wards. Any other code charter municipalities, irrespective of the date of their incorporation, which have changed their method of aldermanic elections in reliance upon the 1962 Act, and which may be inadvertently omitted from this enumeration, are also to be enjoined from further reliance upon the void statute.

15. The single private charter municipality before the court as a class representative is

the City of West Point, which has elected its aldermen on an at-large basis since 1892, in accordance with the provisions of its charter. West Point and other special charter municipalities which elect their aldermen on an at-large basis but demonstrably not in reliance on the 1962 amendment are, of course, unaffected by our decision today.

16. Furthermore, once the at-large system is outlawed, plaintiffs ask this court to require that each of the 265 municipalities submit a plan dividing itself into single-alderman voting wards. Plaintiffs envision that the court would study each plan and approve it only

for such farflung relief, plaintiffs have introduced into the record numerous affidavits of black residents of four municipalities undertaking to relate details of unpleasant incidents between blacks and local police officers, voting officials, and other representatives of municipal government, and between black citizens and other members of the total community. By such affidavits and other evidentiary material, plaintiffs apparently are attempting to furnish proof directed to the *Zimmer* and *Turner* standards, i.e., that past discrimination hampers the efforts of the black community to participate in the political process and that white aldermen have been and continue to be unresponsive to their minority constituents.

In opposition, the defendants have presented counteraffidavits by both black and white citizens of the same four municipalities which contain factual statements directly contrary and opposite to those set forth in plaintiffs' affidavits. Apart from the clearly presented factual controversy supported by persons not subject to cross-examination, the court finds that relief of the full scope sought by plaintiffs is not constitutionally required in this case involving scores of municipal bodies.

Because *Zimmer* and *Turner*, as well as the cases on which they rely,[17] concerned at most only two governmental bodies, the courts in those cases were able to approach the question of dilution with in-depth factual and statistical analyses of each governmental body involved. This empirical approach necessarily shaped the standards by which dilution was to be judged.

[W]here a minority can demonstrate a lack of access to the process of slating candidates, the unresponsiveness of legislators to their particularized interests, a tenuous state policy underlying the preference for multi-member

when satisfied that it would protect black municipal voting strength from dilution.

17. *White v. Regester*, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 324 (1973) ; *Whitcomb v.*

or at-large districting, or that the existence of past discrimination in general precludes the effective participation in the election system, a strong case is made [to support a finding of unconstitutional dilution of minority voting strength]. *Zimmer v. McKeithen supra* at 1305.

*Turner v. McKeithen, supra* at 194. These standards, applicable here, require a highly individualized examination of each challenged entity. For without a case-by-case examination, how could it be said, for example, that the aldermen of any particular municipality, traditionally elected in part by city-wide balloting, have been unresponsive to the particularized interests of their constituents? *See Dallas County v. Reese*, 421 U.S. 477, 95 S.Ct. 1706, 44 L.Ed.2d 312 (1975). Access to the process of slating aldermanic candidates is likely to vary from city to city, as is the effectiveness of minority participation in the election system. For the court to mandate sweeping changes in the aldermanic electoral processes of 265 cities, as plaintiffs contend, would require the court to ignore basic differences in political access by blacks which are bound to exist among a large number of discrete political entities.

Moreover, as a condition precedent to a holding that minority voting strength has suffered unconstitutional dilution in any municipality, there must exist within the municipality a minority element of sufficient size so that it might rationally be said that the voting "strength" which the minority possesses has been reduced. Because each municipality may be situated differently in this regard, the court must limit its decision to the concrete issues raised by the pleadings and supported by substantial evidence.

We are convinced that, because each city clearly presents a separate and

*Chavis*, 403 U.S. 124, 29 L.Ed.2d 363, 91 S. Ct. 1858 (1971) ; see also *Wallace v. House*, 5 Cir., 515 F.2d 619, 1975.

distinct factual situation under the *White, Zimmer* and *Turner* standards for detection of unconstitutional dilution of minority voting strength, the question of the constitutionality of the practice of holding at-large aldermanic elections in cities other than those which have relied upon the 1962 Act is properly left for case-by-case examination.[18]

■ The question may arise why we require individualized treatment here, when municipalities conducting at-large aldermanic elections pursuant to § 21–3–7 are today enjoined without consideration of their individual circumstances. The answer is that in striking down the 1962 Act as it may apply to any municipality, we perceive no relevant legal distinctions among affected municipalities. All have in common their reliance on an unconstitutional statute. Hence, our decision need make no individual inquiry as to dilution of racial voting strengths. By contrast, the election of some or all aldermen by city-wide balloting independent of § 21–3–7 stands upon a wholly different footing. If that practice is unconstitutional it is so only because of facts peculiar to the individual municipality, and not intrinsic in the electoral system itself. Indeed, *Zimmer* teaches that it is "axiomatic" that at-large balloting is not in itself constitutionally infirm. *Zimmer v. McKeithen, supra* at 1304. Thus, there is no judicial inconsistency between voiding § 21–3–7 in all of its possible applications, excepting therefrom no municipality, and acknowledging that individualized treatment must be accorded municipalities which, prior to 1962 employed at-large elections for some or all of their aldermanic posts.

■ Consistent with the foregoing ruling, we not only declare § 21–3–7 to be unconstitutional, but enjoin its continued enforcement in any municipality affected by its terms; the pre-1962 law applicable to municipalities having an aldermanic form of government is declared to be in full force and effect. All other relief, however, sought by plaintiffs will be denied, without prejudice to the right of interested persons to challenge, on constitutional grounds, aldermanic election practices existing under pre-1962 law in any municipality having an aldermanic form of government. Nothing in this opinion is intended to preclude such further legislative action—compliant with present federal law—as Mississippi may choose to take.

### ORDER

This cause having been submitted to a three-judge district court convened pursuant to 28 U.S.C. § 2281 et seq., upon the demand of private plaintiffs and the United States as plaintiff-intervenor for injunctive relief from the enforcement of Miss.Code Ann. § 21–3–7 (1972), a Mississippi statute which requires at-large voting for all posts in municipal aldermanic elections on the ground that the statute is violative of the Fourteenth and Fifteenth Amendments to the Constitution of the United States, and all parties having appeared in court personally and through counsel, and after submission of evidence and memoranda of counsel, and the court having concluded that plaintiffs are entitled to certain relief for the reasons set forth in Memorandum Opinion this day released; it is

Ordered, adjudged and decreed:

1. That § 21–3–7 of the Mississippi Code of 1972, which was enacted by Chapter 537, Mississippi Laws of 1962, is hereby declared null and void, as repugnant to the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

---

18. Although we have pendent jurisdiction to decide this claim, *see Allee v. Mendrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974), this power is discretionary. *See United Mine Workers of America v. Gibbs*,

383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); and *Rosado v. Wyman*, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

2. That in view of the unconstitutionality of the aforesaid § 21–3–7 in its entirety, the statute law of Mississippi, as it existed prior to the passage of § 21–3–7, is declared to be in full force and effect as if it had never been repealed, subject, of course, to further constitutional enactment by the Mississippi Legislature.

3. That the defendants and the class which they represent, which is composed of the officials of Mississippi municipalities affected by the terms of § 21–3–7 and which have, at any time subsequent to May 24, 1962, adopted an at-large system of electing aldermen in reliance upon the aforesaid § 21–3–7, are hereby perpetually and permanently enjoined and restrained from conducting at-large aldermanic elections pursuant to or otherwise acting in reliance upon the aforesaid statute.

4. That all other relief sought by private plaintiffs and plaintiff-intervenor is denied.

5. That all costs are taxed to defendants.

6. That the clerk of this court serve a copy of this Order and the accompanying Memorandum Opinion upon the mayor and board of aldermen of every Mississippi municipality operating under a form of city government other than the commission form. Such service shall be made by United States mail, postage prepaid.

## ORDER

On July 14, 1975, this court entered final judgment in this cause, accompanied by a Memorandum Opinion setting forth findings of fact and conclusions of law as required by Rule 52, F.R.C.P. Shortly thereafter, plaintiffs moved to amend the court's judgment. All parties have now responded to this motion, and plaintiffs have submitted a proposed amended order for the court's consideration.

Plaintiffs seek clarification of the court's original Order, and additionally suggest that further relief be granted. We have now considered the submissions of the parties and agree that some clarification of our judgment is needed, for two reasons. First, certain factual data therein set forth was predicated upon stipulations of the parties regarding the defendant municipalities. We now learn that those stipulations were in some cases incorrect. Secondly, our original judgment falls short, in several respects, of being sufficiently definite and clear to advise the affected parties thereunder.

Accordingly, it is

Ordered as follows:

(1) That this court's Order of July 14, 1975, is hereby vacated.

(2) That Section 21–3–7 of the Miss. Code of 1972, which was enacted as Chapter 537, Mississippi Laws of 1962, is hereby declared null and void in its entirety, as repugnant to the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

(3) That in view of the unconstitutionality of the aforesaid Section 21–3–7 in its entirety, the statute law of Mississippi relating to aldermanic elections which existed prior to passage of Section 21–3–7, and which was modified or repealed by Section 21–3–7, is declared to be in full force and effect as if it had never been repealed, subject, of course, to further constitutional enactment, subsequent to the date of this Order, by the Mississippi Legislature. Likewise, all pre-existing local ordinances of affected Mississippi municipalities [1] which control, govern or relate to aldermanic elections and which existed prior to the adoption of ordinances implementing Section 21–3–7 are declared to be in full force and effect as if they had never been repealed, subject, of course, to further constitutional enactment, subsequent to the date of this Order by the affected Mississippi municipalities.

(4) That members of the defendant class who are officials of Mississippi

---

1. See (4) *infra* for a listing of affected Mississippi municipalities.

municipalities affected by the terms of Section 21–3–7 and who have, at any time subsequent to May 24, 1962, adopted an at-large system of electing aldermen in reliance upon and as required by Section 21–3–7, are hereby perpetually enjoined and restrained from conducting at-large aldermanic elections pursuant to, or otherwise acting in reliance upon, the aforesaid statute or upon local ordinances implementing said statute. Such enjoined municipalities include:

| | |
|---|---|
| Brookhaven | Ocean Springs |
| Canton | Oxford |
| Cleveland | Pass Christian |
| Columbia | Pearl |
| Ellisville | Petal |
| Falkner | Philadelphia |
| Forest | Picayune |
| Golden | Polkville |
| Hatley | Pontotoc |
| Holly Springs | Ridgeland |
| Horn Lake | Sardis |
| Kosciusko | Schlater |
| Lexington | Slate Springs |
| McLain | Soso |
| McComb | Starkville |
| Macon | Stonewall |
| Magee | Sylvarena |
| Magnolia | Thaxton |
| Mantachie | Tupelo |
| Marietta | Tylertown |
| Morgan City | Wesson |
| Moss Point | Woodland |
| New Albany | |

and any other Mississippi municipalities, inadvertently omitted here, which have changed to at-large aldermanic elections pursuant to Section 21–3–7.[2]

(5) That under the statute law of Mississippi as it existed prior to the enactment of what is now Section 21–3–7, and which statute law has now been revived by this Order, all code charter cities in the state with populations of 10,000 or more must hold municipal aldermanic elections by wards; all code charter municipalities with populations of less than 10,000 have the option of electing aldermen by ward or at-large, under the pre-1962 law, and all such municipalities are now free to opt for ward elections.

(6) That municipalities whose elected officials are members of the defendant class but which have held at-large elections continuously since before the passage of what is now Section 21–3–7 are accordingly not required to revert to ward elections.

(7) That insomuch as both plaintiffs and defendant officials of the City of West Point have submitted proof on the issue of whether at-large aldermanic elections in West Point have the effect of unconstitutionally diluting minority voting strength, and since this question has not been mooted by other provisions of this Order, this issue is hereby remanded to Judge Orma R. Smith, managing judge in this action, for such additional proceedings as he deems appropriate, and for resolution on the merits.

(8) That all other relief sought by private plaintiffs and plaintiff-intervenor is denied.

(9) That all matters in issue in this cause having been determined, this three-judge court is hereby dissolved, and all matters relating to the enforcement of the provisions of this Order are hereby remanded to Judge Orma R. Smith, managing judge in this action.

(10) That in order to conform the court's previously released Memorandum Opinion to the provisions set forth herein, pages five and sixteen of such Memorandum are hereby amended in the manner and to the extent shown in the Appendix to this Order.*

---

2. In addition to the above listed municipalities, the plaintiffs represent to the court that two private charter municipalities, Water Valley and Waveland, have changed to at-large aldermanic elections in reliance on Section 21–3–7 and without conforming amendment to their respective municipal charters. *See* Opinion at 17. If this is true, then these two private charter municipalities also are governed by the court's permanent injunction to the same extent as the code charter municipalities enumerated above.

* Editor's note: The Amendments reflected in the Appendix have been made in the opinion as published.

(11) That all costs are taxed to defendants.

(12) That the clerk of this court serve a copy of this Order upon the mayor and board of aldermen of every Mississippi municipality operating under a form of municipal government other than the commission form. Such service shall be made by United States mail, postage prepaid.