**Paul L. WILLIAMS, Anthony L. Young and Miguel Del Valle, Plaintiffs,**

v.

**STATE BOARD OF ELECTIONS, et al., Defendants.**

No. 88 C 2377.

United States District Court, N.D. Illinois, E.D.

Aug. 31, 1988.

Michael P. Seng, John Marshall Law School, Chicago, Ill., James C. Craven, Springfield, Ill., for plaintiffs.

Richard M. Daley, State's Atty., Terry McDonald, Asst. State's Atty., Supervisor, Federal Litigation Unit, Michael Levinson, Chicago Bd. of Elections, Mike Hayes, Roger P. Flahaven, Deputy Attys. Gen., Barry

T. McNamara, D'Ancona & Pflaum, James J. Stamos, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for defendants.

### MEMORANDUM OPINION

GRADY, Chief Judge.

On August 19, 1988, we held a hearing in this case. This opinion will address several of the important issues raised at that hearing.

### DISCUSSION

#### I. SITTING JUDGES ARE NECESSARY PARTIES

 The matter having been discussed extensively and no convincing arguments to the contrary having been raised by counsel, we hold that sitting judges elected from Cook County are necessary parties to this lawsuit. The reasons for this decision are stated in our opinion of August 4, 1988, see 696 F.Supp. 1563 (N.D.Ill.1988), and do not need to be repeated here. Whether these judges should be joined is no longer at issue; what needs to be resolved is by what means to effect this joinder, and the joinder of candidates in the November judicial election. We address this issue in the next section.

#### II. PURSUANT TO RULE 23(b)(3), THE COURT CERTIFIES FIVE DEFENDANT CLASSES: (1) APPELLATE COURT JUDGES, (2) CITY–ONLY CIRCUIT COURT JUDGES, (3) SUBURB–ONLY CIRCUIT COURT JUDGES, (4) COUNTY–WIDE CIRCUIT COURT JUDGES, AND (5) CANDIDATES IN THE NOVEMBER, 1988 JUDICIAL ELECTION

 In response to our invitation at the status hearing held August 12, 1988, plaintiffs have filed a First Amended Complaint. In addition to the parties named in the original complaint, the First Amended Complaint names the three Supreme Court justices holding seats from the First District individually, and seeks certification of the following five defendant classes: [1]

(1) All persons elected in county at-large elections to seats on the Circuit Court of Cook County, or appointed to fill a vacancy in a county-wide seat, whether actively serving on the Circuit Court or serving elsewhere by assignment of the Supreme Court. The representative of this class is Harry G. Comerford, Chief Judge of the Circuit Court.

(2) All persons elected in the suburban-wide at-large elections to seats on the Circuit Court of Cook County, or appointed to fill a vacancy in a suburban-wide seat, whether actively serving on the Circuit Court or serving elsewhere by assignment of the Supreme Court. The representative of this class is Judge Kenneth L. Gillis.

(3) All persons elected in the city-wide at-large elections to seats on the Circuit Court of Cook County, or appointed to fill a vacancy in a city-wide seat, whether actively serving on the Circuit Court or serving elsewhere by assignment of the Supreme Court. The representative of this class is Judge Roger Kiley.

(4) All persons elected or appointed to the Appellate Court of Illinois, First District. The representative of the class is Justice Francis S. Lorenz.

(5) All candidates for judicial vacancies in Cook County on the November, 1988 ballot. The representative of this class is Allan J. Greiman.

Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(1). If defendant classes are to be certified, the only alternative to Rule 23(b)(1) would be certification under Rule 23(b)(3).[2] The certification the plaintiffs seek under Rule 23(b)(1) offers obvious benefits for them, not least that (absent a specific court order) there is no requirement that the defendants be notified individually, or be given an opportuni-

---

**1.** The number and size of the classes follow the suggestions made by the court at the August 12 hearing. The plaintiffs selected the proposed class representatives.

**2.** The Seventh Circuit has ruled that defendant classes cannot, under any circumstances, be certified under Rule 23(b)(2). See Henson v. East Lincoln Township, 814 F.2d 410 (7th Cir.), cert. granted, —— U.S. ——, 108 S.Ct. 283, 98 L.Ed.2d 244 (1987).

ty to opt out. By contrast, Rule 23(b)(3) requires that reasonable notice of the lawsuit be afforded the class members [3] and that they be told of their right to opt out.[4] The classes under consideration here might well qualify for certification under Rule 23(b)(1). Further, there is precedent for certifying classes of public officials as Rule 23(b)(1) classes. *See, e.g., Stewart v. Waller,* 404 F.Supp. 206, 212 (N.D.Miss.1975). Scholarly commentary suggests that when a defendant class can be certified under Rule 23(b)(1) the court should not hesitate to do so. *See, e.g.,* 3B J. Moore, *Moore's Federal Practice* ¶ 23.31[3] (3d ed. 1987); 1 Newberg on Class Actions § 4.62 (2d ed. 1985). The rationale for this preference is that ordinarily no one wants to be a defendant, so that defendant class members who have an opportunity to opt out can be expected to do so. *See* Comment, *Defendant Class Actions and Federal Civil Rights Litigation,* 33 U.C.L.A.L.Rev. 283, 306–307 (1985). Massive opt-out undermines the breadth and finality of judgments, increases the possibility of duplicative litigation, and lessens the probability of giving plaintiffs full relief. *Id.*

In this case, however, the danger that unnamed defendant class members will absent themselves from the action does not exist. We have already held that all members of these proposed classes are necessary parties to this lawsuit at this time.[5] *See supra* p. 1576. Therefore, any members of the defendant class choosing to opt out would still be in the lawsuit. They would simply have to be joined, voluntarily or not, as individual party defendants. Fed.R.Civ.P. 19(a). Because we have held that these defendants are necessary parties, the proposed classes appear particularly well suited for certification under Rule 23(b)(3).

It is not difficult to imagine various scenarios in which individual judges or candidates could have conflicting interests. A necessary characteristic of an adequate class representative is a desire and ability to offer a spirited defense. The most obvious possibility for conflict among these potential defendant class members is that black and Hispanic judges and candidates, who are already members of the plaintiff class, may not wish to oppose this suit. In addition, other judges and candidates may, for reasons of their own, prefer not to oppose this lawsuit. Finally, some potential members of the defendant class may desire to be individually represented by their own counsel. Given these possibilities,[6] the court cannot be certain that any

---

**3.** Rule 23 provides in pertinent part that: "(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2).

**4.** Rule 23 provides in pertinent part: "The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; ... and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel." Fed.R.Civ.P. 23(c)(2).

Rule 23(c) also requires that Rule 23(b)(3) class members be notified that "the judgment, whether favorable or not, will include all members who do not request exclusion." Fed.R. Civ.P. 23(c)(2)(B).

**5.** We have not held that candidates are necessary parties for any issue other than the timing of the next election. *See Williams v. State Board of Elections,* 696 F.Supp. 1563, 1569–70 (N.D.Ill.1988). In addition, we have held only

that sitting elected judges are necessary parties for the liability portion of this case. *See id.* at 1572. Who are the proper parties for the equitable determination of relief, should plaintiffs prevail on the merits, remains to be determined.

**6.** Intervenor McNamara, a sitting Circuit Court judge, suggests that sitting circuit judges' interests will vary with their actual present residences, or with the date of their election, rather than with the area (county-wide, city-only, suburbs-only) from which they were elected:

The districts are irrelevant in terms of the judges['] attitudes towards the lawsuit, their current residencies or their interest in any proposed relief should that issue arise.

. . . . .

If contested elections were held for all sitting judges along lines of smaller districts or even single districts, large numbers of judges would be grouped in very small geographical areas. As an example, of the black judges currently sitting, seven live in the 60615 zip code alone. Another two live in zip code 60611 along with four white judges. Zip code

imaginable class representative will adequately represent the interests of every member of the class, no matter how carefully the plaintiffs have chosen him. The court has no reason to doubt the adequacy of the proposed class representatives at this time,[7] but short of interviewing every member of the proposed class it cannot exclude the possibility that the interests of individual members of one or more of the proposed classes might diverge from the position asserted by the representatives. The only persons who are in a position to make that judgment are the judges and candidates themselves. As all of them are attorneys, the court has no doubt that they are well positioned to reach an informed judgment as to their interests and how best to advance them before this court. The following procedure is designed to make this litigation as manageable and as expeditious as possible while in no way prejudicing the rights of any defendant class member:

1. We certify the five proposed defendant classes under Rule 23(b)(3).

■ 2. Notice will be sent to each member of the defendant classes. A copy of the notice to be sent to one of the classes appears as Appendix A to this opinion. Defendant class members will be informed that they have three options: (A) To do nothing, in which case they will remain members of the defendant class to which they have been assigned; (B) To opt out of the class and be joined as individual party defendants; (C) To opt out of the class, but stipulate that they will agree to be bound by the outcome of the litigation, in which case we will excuse them from all further proceedings.[8] This third option would seem to be the option of choice for members of the defendant class who do not oppose the plaintiffs' position on the merits.

Although a procedure by which opt-out defendants remain in a lawsuit may appear unorthodox, it is actually no different from what would occur if these necessary party defendants had all been joined individually. They would be free to retain counsel in groups if they chose, but their decision to be represented singly or in groups would not alter the fact that they were defendants in the case.

3. In addition to advising potential class members of their three options, the notice to class members will advise them that if they choose option (C), opt-out and stipulate, they will not be liable for any fees and costs incurred either by the defendant class's attorneys or by the defendant class

60646 has 16 judges, all white, living within its boundaries.

Since judges run for retention on a county-wide basis after their initial election, there has been no reason to live within any particular geographical area after being elected.
Brief of Intervenor McNamara at 3–4.

Intervenor McNamara also raises arguments concerning the alleged inadequacy of the proposed class representatives due to possible conflicts of interest based on residency. These arguments are directed towards adequacy of representation for the relief portion of this case. They do not apply to the questions now before the court, which are solely concerned with the merits of the plaintiffs' complaint. It may well be that the classes certified today will no longer be appropriate if the plaintiffs prove their case. That is another issue, one which the court is not inclined to resolve unless and until it has to. "Differences in view among members of the class as to the appropriate remedy, once a violation is established, are secondary to the basic liability issue." *Jacobi v. Bache & Co.,* 16 Fed.R. Serv.2d (Callaghan) 71, 74 (S.D.N.Y. Feb 9, 1972), *aff'd on other grounds,* 520 F.2d 1231 (2d Cir.1985), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 784, 46 L.Ed.2d 642 (1976) (antitrust case).

Although we are not faced with the issue now, we acknowledge that McNamara has raised a substantial question for consideration at the relief stage of this case should the plaintiffs prevail. *See* Ill. Const. Art. 6, § 11 ("No person shall be eligible to be a Judge ... unless he is ... a resident of the unit which selects him.")

7. Indeed, in 696 F.Supp. 1573, the court finds that the proposed class representatives appear to be fully adequate to represent the class.

8. This stipulation shall be partially revokable. Any proper party who decides to recommence active participation in the case may do so at any time, but that party will be bound by all rulings of the court prior to the date of re-entry and by all prior concessions made by the defendants who have remained in the case. No re-entering defendant will be permitted to reopen any matter that has been decided prior to re-entry, nor will the court extend any previously agreed-to schedules in order to allow counsel for a re-entering party to come up to speed.

itself should the plaintiffs prevail. Conversely, should they elect options (A) or (B), they could be exposed to various forms of liability. For example, 42 U.S.C. § 1973*l* provides for attorney's fees and costs for the prevailing party in a case under the Voting Rights Act.

## III. MOTIONS TO INTERVENE

### A. Paddy McNamara

Paddy McNamara, a sitting Circuit Court judge, moved to intervene under Rule 24. We allowed her to intervene permissively under Rule 24(b), as she is a necessary party who could opt out of her defendant class.

### B. MALA, LABA, and Several Hispanic Citizens

The Mexican Lawyers Association ("MALA"), the Latin American Bar Association ("LABA"), David Cerda, Ralph Reyna, Steven Hernandez and Jessie Reyes sought to intervene as party plaintiffs or, in the alternative, to intervene permissively on the grounds that they have a common interest in this action. Cerda is the only elected Hispanic Judge of the Circuit Court of Cook County. Reyna is an appointed Hispanic Associate Judge of the Circuit Court of Cook County. Hernandez is a Hispanic attorney and president of MALA, as well as a member of LABA. Reyes is president of LABA, and a member of MALA.

■ At the August 19, 1988 hearing, we denied MALA's and LABA's motion to intervene. Under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), "an association has standing to bring suit on behalf of its members when ... [*inter alia*] the interests it seeks to protect are germane to the organization's purpose...." *Id.* at 343, 97 S.Ct. at 2441.

Here, the purpose of both MALA and LABA is to protect the interests of Hispanic attorneys, not to represent the Hispanic citizens *as voters*. Although we denied their motions to intervene, we granted these organizations the right to appear as *amici curiae*.

■ As for the individual Hispanic intervenors, we denied their motions to intervene because they are already members of the plaintiff class and, in the case of Judge Cerda, of both the plaintiff class and a defendant class. Because these individuals made no showing that their class representation was inadequate, we saw no reason to add them as individual parties. If we allow any member of the plaintiff class to join the case as an individual plaintiff simply because he or she so desires, we risk accumulating an unmanageable number of plaintiffs, thereby undermining one of the purposes of the class certification procedure.

## IV. MOTION FOR SUMMARY JUDGMENT

At the hearing, we informed plaintiffs' counsel that we had reviewed their motion for summary judgment and had found it deficient in several respects. In the following discussion, we detail some of these problems.[9]

### A. Plaintiffs Failed to Produce Sufficient Relevant Evidence to Establish a Vote Dilution Claim

■ The first precondition of *Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986), requires each plaintiff subclass "to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district." *Id.* at 50, 106 S.Ct. at 2766. In order to meet this precondition, plaintiffs submitted a list of contiguous census tracts which could form a single-member Su-

---

**9.** As we mentioned at the hearing, not all aspects of plaintiffs' motion for summary judgment are deficient. For example, the plaintiffs have provided sufficient evidence regarding many of the discrimination factors cited in the Senate Judiciary Committee Report. However, as noted in the text, the plaintiffs have failed to produce evidence sufficient to meet the three *Gingles* preconditions of a vote dilution claim. Until plaintiffs produce sufficient evidence to meet the necessary elements of their claim, we decline to rule on summary judgment concerning the peripheral Committee Report factors.

preme Court district. The voting age population of this district is alleged to be 52.3 percent black, 18.1 percent Hispanic, and 28.6 percent white. If these data are undisputed, the black subclass has met the first *Gingles* precondition with respect to the at-large election of Supreme Court justices. Further, because blacks could necessarily form a majority in at least one Appellate or Circuit Court subdistrict which could be drawn within this proposed Supreme Court district, the black subclass has also met the first *Gingles* precondition for challenging the Appellate and Circuit Court election systems.

On the other hand, data submitted by plaintiffs do not show that the Hispanic subclass necessarily forms a majority in any proposed Appellate or Circuit Court district. Alone, the fact that Hispanics constitute 18.1 percent of the plaintiffs' proposed Supreme Court district proves nothing. The plaintiffs must at least produce census tracts, or similar information, which describe a proposed Appellate Court district in which Hispanics constitute a majority.

The plaintiffs' failure to produce sufficient census information may stem from their confusion regarding our plaintiff class certification order which divided the minority class into subclasses. Our order means that each subclass must individually prove all elements of a vote dilution claim. For example, as shown above, the Hispanic subclass cannot meet the first *Gingles* precondition by relying on the showing made by the black subclass. Therefore, the plaintiffs must be prepared to show that each subclass can make out a claim under the Voting Rights Act.

Aside from size and compactness, *Gingles* also requires each subclass "to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances . . .—usually to defeat the minority's preferred candidate." *Id.* In order to make this showing of "polarized voting," the plaintiffs submitted election data from the 1983 and 1987 Chicago mayoral races.[10]

We believe this evidence is deficient in several ways. First, it says nothing about suburban Cook County voting patterns. Second, it pertains only to relatively recent elections. Third, it concerns only non-judicial elections. We do not believe that evidence of polarized voting in a mayoral race is sufficient to prove such polarization exists in Cook County judicial elections. In order to prevail, the plaintiffs must submit recent judicial election results which show that racially polarized voting exists in Cook County.[11]

**B. Plaintiffs' Memorandum Reveals a Misunderstanding of *Thornburg v. Gingles***

■ In their memorandum, the plaintiffs assert the following: "In the words of the Court in *Thornburg*, minority political cohesiveness means 'blacks vote for blacks.' " The Supreme Court made no such statement in *Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). The problem with plaintiffs' assertion is not just its inaccuracy; it also reveals plaintiffs' misinterpretation of *Gingles*. Under *Gingles*, political cohesiveness means that minorities vote as a block, not that they vote for candidates who belong to their racial or ethnic group.

■ Moreover, based on this mistaken interpretation of *Gingles*, plaintiffs should not conclude that the underrepresentation

10. In their submissions, the plaintiffs fail to include a Local Rule 12(e) statement of genuine issues of material fact. If the plaintiffs choose to file another summary judgment motion, they should file a 12(e) statement in which they set forth separately in numbered paragraphs each fact which they claim is undisputed and cite the specific source for it. For example, if "only 25% of minorities voting in a presidential contest will vote in a circuit court race," Motion for Summary Judgment, at 11, the plaintiff should include this fact in its 12(e) statement and identify its source.

11. In their memorandum, the plaintiffs also mention "ballot loss" as a factor in judicial elections. It may be a factor, but the plaintiffs have failed to explain its relevance in determining whether "racially polarized" voting exists in Cook County. On any future motion or at trial, plaintiffs should explain how the ballot loss factor fits into their theory of this case.

of minorities on the state bench suffices to prove vote dilution. Section 2 of the Voting Rights Act protects the rights of minorities to elect candidates *of their choice*, not the right of minority officials to be elected in representative numbers. Therefore, the absence or relative lack of minority judges on Illinois courts does not *by itself* prove vote dilution. The critical inquiry is how candidates (white or minority) preferred by one or both of the minority subclasses have fared in judicial elections in Cook County. Consequently, plaintiffs cannot prevail on this theory without demonstrating that the preferred candidates of the minority subclasses have lost or, put another way, that the judges who have been elected were not the choices of the subclasses. To make this showing, plaintiffs must produce relevant judicial election data over the past several elections.

If the plaintiffs choose not to produce such data or the evidence does not show the inability of the subclasses' preferred candidates to get elected, the plaintiffs can instead attempt to show that the preferred candidates of the minority subclasses face obstacles so great as to constitute a denial of their ability to participate effectively in the electoral process. If the plaintiffs choose this course and argue, for example, that the judicial candidate slating process is racially biased, they must prove two things. First, they need to adduce facts that support their case. Second, they need to show that the relief they are requesting will solve the problem, i.e., but for the at-large system, the slating process would not deprive them of the opportunity to elect candidates of their choice. Proof that the slating process is discriminatory might be enough to obtain relief against the Democrat and Republican parties, but the political parties are not defendants to this action. Therefore, the plaintiffs must prove that substituting a single-member or small multi-member judicial election system will result in more victories by candidates who are the true choices of the minority subclasses.

CONCLUSION

We hold that all sitting judges are necessary parties. Further, we certify four de-fendant classes of judges and a defendant class of candidates for judicial office in the November, 1988 election.

We grant Paddy McNamara's motion to intervene permissively. We deny the intervention motions of MALA, LABA, Daniel Cerda, Ralph Reyna, Steven Hernandez, and Jessie Reyes, but grant MALA and LABA leave to appear as amici curiae.

We deny the plaintiffs' motion for summary judgment.

APPENDIX A

IN THE UNITED STATES
DISTRICT COURT

FOR THE NORTHERN DISTRICT
OF ILLINOIS

EASTERN DIVISION

PAUL L. WILLIAMS, et al., Plaintiffs,

v.

STATE BOARD OF ELECTIONS, et
al., Defendants.

No. 88 C 2377

NOTICE OF CLASS CERTIFICATION

You are hereby notified that Chief Judge John F. Grady has entered an order certifying defendant classes in the above-captioned litigation. You are a member of a class of all persons elected or appointed to the Appellate Court of Illinois, First District. The representative of the class certified by Chief Judge Grady is Francis S. Lorenz. Justice Lorenz may be contacted at Room 3000, Richard J. Daley Center, Chicago, Illinois 60602, 793–5416.

In this case, plaintiffs challenge the election of justices and judges in Cook County, Illinois, as allegedly violating the federal Voting Rights Act, 42 U.S.C. Section 1973. Plaintiffs represent themselves and black and Hispanic citizens 18 years or older who reside in Cook County. They claim that the at-large system of electing justices and judges in Cook County unlawfully dilutes their voting strength by allegedly minimizing or canceling out their ability to elect candidates of their choice.

For their relief, they ask this court to abolish the present at-large electoral system. In its place, plaintiffs propose the creation of single member districts, out of which each justice and judge in Cook County would be elected. In the alternative, with respect to Appellate Court justices and Circuit Court judges, plaintiffs ask that small multi-member districts be created.

This notice is being provided to you because this litigation may affect your rights as a member of the state judicial system or as a candidate for state judicial office.

1. The judgment, whether favorable or not, will include all members of the class who do not request exclusion.

2. The court will exclude you from the class if you indicate in writing to the court that you wish to be excluded from the class before 4:30 p.m. on September 28, 1988.

3. You have the option to exclude yourself from the defendant class:

(a) If you exclude yourself from the defendant class but enter into a stipulation that you will be bound by the judgment of the court, you will not be named as an individual party defendant;

(b) If you exercise the option to exclude yourself from the class and do not stipulate to be bound by the judgment, you will be joined as an individual party defendant.

4. You should be advised that if you remain a member of the class and the plaintiffs prevail in this lawsuit, you could be exposed to possible liability for plaintiffs' reasonable litigation expenses and attorneys' fees pursuant to 42 U.S.C. 1971*l.* *See* 1 H. Newberg, *Newberg on Class Actions* § 4.70 (2d ed. 1985); Note, *Defendant Class Actions,* 91 Harv.L.Rev. 630, 647–50 (1978); Wolfson, *Defendant Class Actions,* 38 Ohio St.L.J. 459, 487 (1977). On the other hand, if you opt out of the class and stipulate to be bound, you would not be exposed to liability for fees and expenses.

5. A form is attached to this notice which should be returned to the Clerk of the United States District Court on or before 4:30 p.m., September 28, 1988. The address of the clerk's office is 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604. In the event that the form is not returned to the Clerk's Office, you will remain a member of the defendant class. A copy of the form should also be sent to your class representative as indicated above.

6. Any member of the class who does not request exclusion may, if the member desires, enter an appearance through counsel. Be advised, however, that this notice is not intended to affect the rights you may have and the procedures to be followed in requesting representation and indemnification from the State of Illinois as provided in Ill.Rev.Stat. ch. 127, ¶ 1301, *et seq.* (1987).

7. If you have any suggested changes for either your class representative or the definition of your class, you may present those suggestions to the court in the form of a motion through your class representative, if appropriate.

U.S. DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

WILLIAMS, et al., Plaintiffs,

vs.

STATE BOARD OF ELECTIONS, et al., Defendants.

No. 88 C 2377

THE HONORABLE JOHN J. GRADY CHIEF JUDGE

**A**

☐ I exercise the option to exclude myself from the defendant class, but I do agree to be bound by the judgment of the court.

**B**

☐ I exercise the option to exclude myself from the defendant class and I do not agree to be bound by the judgment of the Court. I understand that I will be joined as an individual defendant.

**C**

☐ I do not exercise the option to exclude myself from the defendant class. I choose to remain a member of the de-

**1583**

fendant class and realize that the judgment of the court will be binding on me.

Please Print

_____ _____
Name Signature

_____
Address

_____
Telephone Number